IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

—————————————————————————————

RYAN J. W.,

                        Plaintiff,

        v.                                        Civil Action No.
                                                  5:22-CV-1045 (GTS/DEP)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                        Defendant.

—————————————————————————————

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                            JUSTIN M. GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    KRISTINA D. COHN, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that he was not disabled during the relevant period and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which he has applied. The matter has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3. For the reasons set forth below, I recommend a finding that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in April of 1987, and is currently thirty-six years of age. He was thirty-two years old on September 14, 2020, the date upon which he filed his application for benefits. Plaintiff measures five feet and nine inches in height, and weighed approximately two hundred and fifty-six pounds during the relevant period. According to the plaintiff, he lives with his girlfriend and their two children in a trailer in Fulton, New York, and his daughter from a previous relationship also came to live with them for a portion of the relevant period.

In terms of education, plaintiff reports that he attended high school through the eleventh grade, and subsequently obtained his GED. In the

past plaintiff has worked sporadically in part-time, low paying positions, including as a cleaner, line packer, cable installer, and forklift driver.

Plaintiff alleges that he suffers primarily from effects of his mental impairments including depression, anxiety, anger issues, difficulty being around people, and difficulty paying attention and concentrating, as well as from his physical impairments in the form of pain and numbness as a result of a spinal condition. As is relevant to his application, plaintiff has treated for his impairments with sources at Physician Care P.C., New York Spine and Wellness Center, Oswego Hospital, and Oswego Hospital Behavioral Health.

At the administrative hearing related to his claim for disability benefits, held on October 29, 2021, plaintiff reported that he is unable to work due in part to his physical impairments because he has difficulty lifting heavy objects, and his ability to walk, sit, and lift are limited by his back pain and numbness in his left leg. He also claimed difficulty due to the effects of his mental impairments, including anger issues and difficulty getting along with others. Plaintiff testified that he spends his days staying home, watching television, playing video games, and cleaning laundry or dishes at times when his pain is less, although he needs to take breaks when doing chores. Plaintiff's girlfriend drives him because of his pain, and

he rarely goes shopping.

II.   PROCEDURAL HISTORY

    A.   Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social

Security Act on September 14, 2020.  Administrative Law Judge ("ALJ")

Jeremy G. Eldred held an administrative hearing related to that application

on October 29, 2021, and subsequently issued a decision on November 16,

2021, finding that plaintiff was not disabled.  That opinion became a final

determination of the agency on August 8, 2022, when the Social Security

Appeals Council denied plaintiff's request for review of the ALJ's decision.

    B.   The ALJ's Decision

In his decision, ALJ Eldred applied the familiar, five-step sequential

test for determining disability.  At step one, he found that plaintiff had not

engaged in substantial gainful activity during the relevant period.  The ALJ

next found at step two that plaintiff suffers from severe impairments that

impose more than minimal limitations on his ability to perform basic work

functions, including stenosis of the lumbar spine, asthma, obesity, major

depressive disorder, mild intellectual disability, social anxiety disorder, and

attention deficit hyperactivity disorder ("ADHD").  As part of his step two

finding, ALJ Eldred additionally found that plaintiff's alleged ulnar nerve

4

impingement of the wrists and lateral epicondylitis of the elbows does not rise to the level of a severe impairment, and his alleged cervical disc disorder with radiculopathy has not been established as a medically determinable impairment.

At step three, ALJ Eldred examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed conditions set forth in those regulations, specifically considering Listings 1.15, 1.16, 3.02, 12.04, 12.05, 12.06, and 12.11, as well as Social Security Ruling ("SSR") 19-2p, which pertains to the evaluation of plaintiff's obesity.

ALJ Eldred next surveyed the available record evidence and concluded that, during the relevant period, plaintiff retained the residual functional capacity ("RFC") to perform a range of work at the light exertional level, with the following additional limitations:

> he must avoid exposure to concentrated dust, odors, fumes, or gases; can understand, remember, and carry out only simple and routine instructions; can concentrate, persist, and maintain pace in a work setting to the extent necessary to perform only simple and routine tasks; can interact no more than occasionally with supervisors, co-workers, or the public; and can appropriately adapt to ordinary changes in an unskilled occupation that involves only simple and routine tasks.

ALJ Eldred went on to step four and concluded that plaintiff has no past relevant work.  He then proceeded to step five and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing as representative positions the jobs of small products assembler, laundry worker, and bakery line worker.  Based upon these findings, ALJ Eldred determined that plaintiff was not disabled at the relevant times.

C.    This Action

Plaintiff commenced this action on October 7, 2022.[1]  In support of his challenge to the ALJ's determination, plaintiff argues that the ALJ erred by (1) failing to properly assess the opinion of treating physician Dr. Nickolas Togias when finding that opinion to be unpersuasive, (2) failing to properly assess the opinion of consultative examiner Dr. Jeanne Shapiro when finding that opinion to be persuasive, and (3) failing to conduct a proper evaluation of his subjective complaints.  Dkt. No. 13.

Oral argument was conducted in this matter, by telephone, on September 19, 2023, at which time decision was reserved.

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final

decision by the Commissioner is subject to a "very deferential" standard of

review, and is limited to analyzing whether the correct legal standards were

applied, and whether the decision is supported by substantial evidence.

*Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012);

*Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221

F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir.

1998).  Where there is reasonable doubt as to whether an ALJ has applied

the proper legal standards, the decision should not be affirmed even

though the ultimate conclusion reached is arguably supported by

substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

If, however, the correct legal standards have been applied, and the ALJ's

findings are supported by substantial evidence, those findings are

conclusive, and the decision will withstand judicial scrutiny regardless of

whether the reviewing court might have reached a contrary result if acting

as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v.

Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must

be "more than a mere scintilla" of evidence scattered throughout the

administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation

marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal

whether an ALJ's findings are supported by substantial evidence, a

reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also

include that which detracts from its weight."  *Williams*, 859 F.2d at 258

(citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951);

*Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

      The Social Security Act ("Act") defines "disability" to include the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F.

Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

1.    ALJ's Assessment of the Opinion Evidence

Plaintiff's first two challenges to the ALJ's findings center on the ALJ's assessment of the opinions from treating physician Dr. Nickolas Togias and

consultative examiner Dr. Jeanne Shapiro.  Dkt. No. 15, at 9-21.
Specifically, plaintiff argues that the ALJ failed to properly assess Dr.
Togias' opinion when finding that opinion to be unpersuasive, and
improperly found that the opinion of Dr. Shapiro is persuasive.  *Id.*

Because plaintiff's application was filed after March 27, 2017, this
case is subject to the amended regulations regarding opinion evidence.
Under those regulations, the Commissioner "will not defer or give any
specific evidentiary weight, including controlling weight, to any medical
opinion(s), . . . including those from your medical sources," but rather will
consider whether those opinions are persuasive by primarily considering
whether the opinions are supported by and consistent with the record in the
case.  20 C.F.R. § 416.920c(a); *see* 82 Fed. Reg. 5844-01, 2017 WL
168819, at *5853 (stating that, in enacting the new regulations, the agency
was explicitly "not retaining the treating source rule").  An ALJ must
articulate in his or her determination as to how persuasive he or she finds
all of the medical opinions and explain how he or she considered the

supportability[2] and consistency[3] of those opinions.  20 C.F.R. §
416.920c(b).  The ALJ also may – but is not required to – explain how he or
she considered the other relevant enumerated factors related to the
source's relationship with the claimant, including the length of any
treatment relationship, the frequency of examinations by the source and the
purpose and extent of the treatment relationship, whether the source had
an examining relationship with the claimant, whether the source specializes
in an area of care, and any other factors that are relevant to the
persuasiveness of that source's opinion.  20 C.F.R. § 416.920c(c).

> a.    Dr. Togias

On September 29, 2021, Dr. Togias stated in a form entitled "Medical
Source Statement" that plaintiff has diagnoses of general anxiety, ADHD,
intermittent major depressive disorder, and an explosive disorder, the
symptoms of which include anhedonia or pervasive loss of interest, blunt,

---

[2]      On the matter of supportability, the regulations state that "[t]he more relevant the
objective medical evidence and supporting explanations presented by a medical source
are to support his or her medical opinion(s) or prior administrative medical finding(s), the
more persuasive the medical opinion or prior administrative medical findings(s) will be."
20 C.F.R. § 416.920c(c)(1).

[3]      On the matter of consistency, the regulations state that "[t]he more consistent a
medical opinion(s) or prior administrative medical finding(s) is with the evidence from
other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §
416.920c(c)(2).

flat or inappropriate affect, feelings of guilt or worthlessness, poverty of speech content, generalized persistent anxiety, mood disturbance, emotional withdrawal or isolation, and memory impairment.  AT 696.  Dr. Togias opined that plaintiff is unable to meet competitive standards[4] in the abilities to remember work-like procedures, understand, remember and carry out very short and simple instructions, maintain attention for two hour segments, maintain regular attendance and be punctual within customary tolerances, work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday or workweek without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, maintain socially appropriate behavior, travel in unfamiliar places, and use public transportation.  AT 697-98.  Dr. Togias also opined that plaintiff is seriously limited but not precluded[5] in his abilities to sustain an

---

[4]    This term is defined by the form as "your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."

[5]    This term is defined by the form as the "ability to function in this area is seriously limited and less than satisfactory but not precluded in all circumstances."

ordinary routine without special supervision, ask simple questions or request assistance, interact appropriately with the general public, and adhere to basic standards of neatness and cleanliness. *Id.* Curiously, the line on the form related to dealing with normal work stress is marked both as unable to meet competitive standards and seriously limited but not precluded. AT 697. In the section where Dr. Togias was asked to explain the selected limitations, he wrote "repated [sic] problems in attention & memory per chart," and also indicated that plaintiff has chronic pain in response to a question regarding whether plaintiff's psychiatric condition would exacerbate his experience of pain or other physical symptoms. AT 698. Finally, Dr. Togias opined that plaintiff's impairments would cause him to be absent more than four days per month. *Id.*

The ALJ found Dr. Togias' opinion to be unpersuasive, stating that Dr. Togias "provided hardly any supporting explanation on the assessment documents themselves, and his conclusions are inconsistent with the content of the underlying mental health treatment records." AT 19. The ALJ cited specifically to the fact that "longitudinal mental status examination findings since the amended alleged onset date have been essentially unremarkable, and consistently note a cooperative attitude, an appropriate

affect, normal speech, appropriate thought content, intact memory, good insight, and good judgment." *Id*.

Plaintiff first argues that this analysis fails to adequately consider the supportability factor because the ALJ found only that Dr. Togias did not provide relevant explanations on the medical source statement itself, without considering either his discussion of plaintiff's symptoms on that form and the statement that referenced his treatment notes, or the content of those referenced records. Dkt. No. 13, at 11-12. Plaintiff also argues that if the explanations provided by Dr. Togias were insufficient to explain the basis of his opinion, the ALJ should have recontacted him for more information. Dkt. No. 13, at 12-13.

While it is true that the ALJ specifically cited only the lack of explanation by Dr. Togias within his medical source statement, that fact is not fatal to his supportability analysis. As was discussed above, in the section in which Dr. Togias was prompted to provide an explanation of the various significant limitations he opined are present, he wrote only that plaintiff has problems with attention and memory, "per chart." AT 698. However, the treatment notes from Dr. Togias and others at his practice group do not substantiate ongoing difficulties with attention or memory. To the contrary, many mental status examination notes routinely show intact

memory.  *See, e.g.*, AT 702, 706, 718, 722, 733, 741, 747, 751, 755, 760, 766, 781, 785, 795, 801, 805, 827, 831, 836, 848, 853, 859, 870, 877, 892, 897, 907, 924, 929, 936, 943, 949, 956, 963, 972, 980, 988, 995.  The only apparent notation of impaired memory was in January of 2019, well prior to the application date.  AT 728.  Further, although plaintiff reported difficulty concentrating to providers on various occasions in late 2019 and early 2020, it was noted that he reported improvement in his focus and attention when he was prescribed a stimulant medication for his ADHD in February 2020.  AT 702, 740, 864.  He subsequently reported that his medication was helping his mood and attention in April 2020, that he was experiencing "significant improvement" of his ADHD symptoms on medication in August 2020, and again later that his medication was helping his ADHD symptoms and energy level in October 2020.  AT 816, 940, 947.  No further complaints of ongoing difficulties with concentration or attention are reported in 2020 or 2021.

Because the treatment records from Dr. Togias' own practice, including notes from Dr. Togias himself, do not substantiate his assertion that plaintiff experiences significant limitations as a result of memory and attention difficulties, I find no error in the ALJ's finding that Dr. Togias' opinion was unsupported by his own scant explanations.  I further note that

the ALJ's citation to generally normal mental status examinations includes treatment notes signed by Dr. Togias, and his consideration of Dr. Togias' own treatment notes as part of his analysis of the supportability factor can therefore be gleaned from his decision, even if it was not thoroughly explained.

As to plaintiff's argument that the ALJ should have recontacted Dr. Togias for an explanation of his opined limitations, I find the ALJ was under no such duty here. The ALJ is required to recontact a physician only where he or she possesses inadequate information or evidence to render a determination on the issue of disability. *See Carol C. v. Comm. of Soc. Sec.*, 21-CV-0862, 2023 WL 2664430, at *14 (N.D.N.Y. Mar. 28, 2023) (Dancks, M.J.) (noting that "there is no obligation to recontact a treating physician where the evidence of record is 'adequate to permit the ALJ to make a disability determination'") (collecting cases). I perceive no indication that such was the case here. The record contains not only hundreds of pages of mental health treatment records, including those from Dr. Togias, but also an opinion from a consultative examiner who personally assessed plaintiff. The fact that Dr. Togias did not provide any significant written explanation for his opinion, despite being prompted to in the medical source statement form, does not divest the ALJ of an ability to

assess plaintiff's functioning in light of all of the evidence in the record, especially when, as was discussed, the explanation he did provide is directly contradicted by his own treatment records.

Further, plaintiff argues that the ALJ was not permitted to rely on fairly normal findings in Dr. Togias' opinion while discrediting his medical opinion, citing *Stacey v. Comm'r of Soc. Sec.*, 799 F. App'x 7 (2d Cir. 2020). Dkt. No. 13, at 13. However, that case does not stand for the proposition that an ALJ must accept a source's medical source statement over the findings in that source's own treatment notes where those two conflict; such a rule would indeed be directly contrary to the regulations regarding the evaluation of opinion evidence, which require an ALJ to consider the objective medical evidence provided by the source along with any supporting explanations when assessing the persuasiveness of an opinion. *See* 20 C.F.R. § 416.920c(c)(1) (noting that, as to the assessment of the supportability factor, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be"). Indeed, the Second Circuit has found in other cases that an ALJ's decision can be supported by substantial evidence in situations when he or she has relied on documented findings from a treating physician's

18

treatment notes even where the ALJ has ultimately rejected that same source's contrary medical opinion. *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 9 (2nd Cir. 2017). I further note that the context underlying the finding in *Stacey* is distinguishable from the circumstances presented in this case. There, the court noted that any reliance on normal mental status examinations over the assessments of concentration difficulties was problematic given that "none of the mental status evaluations relied upon by the Commissioner purport to measure Stacey's ability to concentrate." *Stacey*, 799 F. App'x at 11. As was discussed above particularly related to memory and concentration, the mental status examinations and treatment records of Dr. Togias and other sources do indeed assess areas of functioning such as concentration and memory, with findings in those records that appear to directly contradict both Dr. Togias' opined limitations and his supporting explanation. Because the findings in the treatment notes contradict Dr. Togias' explanation for the opined limitations, it was not error for the ALJ to find that his opinion is unsupported by either his own explanations or his own treatment notes.

Plaintiff additionally argues that the ALJ's assessment of the medical evidence was unduly selective because he failed to mention a handful of abnormal findings that some of the mental status examinations contained,

including reports of depressed or anxious mood, one instance where he had impaired prosody of speech, a handful of notations of fair or poor insight or judgment, and a few notations that he might have borderline intelligence.  Dkt. No. 13, at 14-15.  However, the fact that some treatment notes revealed slight abnormalities in reported mood in particular is not indicative of a failure of the ALJ to properly consider all of the evidence.  I also note that, in terms of the notations of depressed or anxious mood, many of these entries were specifically noted to be "reported," rather than observed.  *See e.g.*, AT 751, 766, 795, 800, 826, 848, 906, 936, 942, 963.  Although reported symptoms are still relevant to the consideration of mental impairments in particular, plaintiff has not provided any compelling argument as to how the ALJ's failure to specifically discuss the more sporadic notations of fairly minor abnormalities on examinations represents a failure to appropriately consider the evidence that would undermine his overall findings regarding Dr. Togias' opinion.  Plaintiff's citation to other evidence that he believes supports his argument, most notably his subjective reports, represents little more than a request to reweigh the evidence.  However, "[w]hen applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . nor will it determine

whether [the applicant was actually disabled. [Rather,] [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'" *Warren v. Comm'r of Soc. Sec.*, 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) (Carter, M.J.).  As will be addressed in greater detail below in the relevant section, the ALJ did not err in finding plaintiff's subjective reports of symptoms to be less than wholly consistent with the evidence, and therefore did not err in choosing to decline to rely to any great extent on such symptoms when assessing the supportability and consistency of Dr. Togias' opinion.

Based on the foregoing, I find that the ALJ appropriately considered the relevant factors and the evidence when assessing Dr. Togias' opinion and that his finding that such opinion is unpersuasive is supported by substantial evidence.

b.    Dr. Shapiro

Plaintiff also argues that the ALJ erred in relying on the opinion from consultative examiner Dr. Shapiro because she is a one-time examining source who did not have the opportunity to review any of plaintiff's treatment notes, and therefore provided only a "one-time snapshot" that is

not necessarily indicative of plaintiff's overall functioning.  Dkt. No. 13, at 19-21.

On February 19, 2021, Dr. Shapiro conducted an examination of plaintiff, observing that he was cooperative, had adequate social skills and manner of relating, appropriate dress and grooming, normal speech, a coherent and goal directed thought process, a flat affect with a report that he felt "blah," grossly intact attention and concentration, grossly intact recent and remote memory, an estimated low average to borderline intellectual functioning, and fair insight and judgment.  AT 525-26.  Based on her examination and information provided by the plaintiff, Dr. Shapiro opined that plaintiff does not have any limitations in his abilities to understand, remember, and apply simple directions and instructions, use reason and judgment to make work-related decisions, sustain an ordinary routine and regular attendance at work, or maintain personal hygiene and appropriate attire or be aware of normal hazards and take appropriate precautions.  AT 526-27.  She opined that he has a mild limitation in understanding, remembering, and applying complex directions and instructions, a mild-to-moderate limitation in sustaining concentration and performing tasks at a consistent pace depending on his level of anxiety, and moderate limitations in interacting adequately with others and

regulating emotions, controlling behavior, and maintaining well-being. *Id.*
The ALJ found Dr. Shapiro's opinion to be persuasive because it is well-supported by the findings in her own mental status examination and consistent with the other evidence in record showing general normal mental status findings and positive response to treatment. AT 19.

Inasmuch as the ALJ properly considered the relevant factors of supportability and consistency as to this opinion, I find no error in that assessment for the reasons that were already discussed above related to the evaluation of evidence when discussing Dr. Togias' opinion. In particular, I see no indication that the ALJ's consideration of the evidence was inappropriately selective or suggestive or that he ignored relevant evidence that would undermine the substantial evidence supporting his findings.

Nor am I persuaded by plaintiff's argument that this assessment was conducted during a period of decreased symptomology and thus was not representative of his functioning during the full relevant period. This argument is premised on selected notations from treatment notes indicating that plaintiff continued to experience mental health symptoms, yet plaintiff's citations do not address the fact that his mental status examinations generally did not document an appreciable worsening in his condition on

any ongoing basis either before or after Dr. Shapiro's examination. While, to be sure, plaintiff experienced fluctuations in his mental health symptoms at various times in response to the circumstances of his life, the record does not document that such fluctuations represented such a material deviation from the symptoms he was experiencing at the time of the examination by Dr. Shapiro such as to invalidate her opinion. As was already discussed, plaintiff's difficulties with attention and concentration were improved on medication by early 2020, something which is corroborated by Dr. Shapiro's examination findings approximately a year later. I note that, contrary to plaintiff's argument, the period from December 2020 through March 2021 appears to have been when plaintiff was experiencing an exacerbation of depression symptoms rather than a period of improvement; he reported frustration and depression being not well controlled in December 2020, continuing to struggle with depression in January 2021, and struggling with depression and continuing to stay home in March 2021, all of which occurred in the months surrounding Dr. Shapiro's examination. By contrast, in April 2021, plaintiff reported experiencing a stable mood and denied the presence of depression, noting that his medications were working well. AT 978. In June 2021, it was noted he appeared to be doing fairly well despite experiencing occasional mood

swings.  AT 986.  While plaintiff experienced some increase in irritability

and frustration in July, August, and September 2021, mental status

examinations appeared to be generally normal other than notations of poor

insight.  AT 760, 785, 831, 993.  The record therefore does not validate the

argument that the ALJ should have realized that Dr. Shapiro's opinion was

rendered at a time when plaintiff was experiencing a decrease in symptoms

compared to other documented periods of the record.  Although there

certainly must be caution when relying on the opinion of a one-time

examiner, particularly when evaluating mental health conditions, which can

wax and wane, I see no context in this specific case that would suggest

that Dr. Shapiro's opinion could not be considered to be generally indicative

of plaintiff's functioning.

Based on the foregoing, I find no error in the ALJ's finding that Dr.

Shapiro's opinion is persuasive.

### 2.   The ALJ's Assessment of the Subjective Complaints

Plaintiff lastly argues that the ALJ failed to conduct a meaningful

assessment of whether his subjective reports were consistent with the

evidence, as required by the controlling regulations.  Dkt. No. 13, at 22-25.

Specifically, plaintiff argues that the ALJ has not provided adequate

reasons to support his finding regarding plaintiff's subjective symptoms because (1) he failed to properly assess the full extent of the objective medical evidence, particularly the mental status examination findings, (2) he improperly relied on plaintiff's reported activities of daily living because he did not explain how those activities demonstrate that he can perform work on a regular and continuing basis, and (3) he improperly relied on plaintiff's ability to attend appointments consistently because they were mostly by telephone and did not require him to leave his home.  *Id.*

Under the two-step review protocol applicable in social security cases for assessing a claimant's subjective reports of symptoms, an ALJ must first determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, and, if so, the ALJ must then evaluate the intensity and persistence of those symptoms and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3-8.  When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the claimant and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the claimant's

symptoms, considering relevant factors which include evidence regarding

(1) daily activities, (2) the location, duration, frequency, and intensity of pain

or other symptoms, (3) factors that precipitate or aggravate the claimant's

symptoms, (4) the type, dosage, effectiveness, and side effects of

medication, (5) any treatment other than medication that is used to relieve

the symptoms, (6) other measures to obtain relief of symptoms, and (7) any

other relevant factors. *Id.*

If the ALJ finds that a claimant's subjective testimony should be

rejected, he or she must explicitly state the basis for doing so with sufficient

particularity to enable a reviewing court to determine whether those

reasons for disbelief were legitimate and whether the determination is

supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 154,

151 (N.D.N.Y. 1999) (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608

(S.D.N.Y. 1987)). The ALJ's decision need not contain a discussion of all

of the potentially relevant factors listed above, provided that it is clear from

the decision that the ALJ considered all of the evidence and that he or she

provided specific reasons for his or her determination as to the intensity,

persistence, and limiting effect of the claimant's symptoms. *See Cichocki*

*v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (finding that failure to discuss

certain factors did not require remand because the ALJ provided specific

27

reasons for his determination "and the record evidence permits us to glean the rationale of the ALJ's decision").  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).

In his decision, the ALJ found that although plaintiff has shown he has medically determinable impairments that can be expected to cause the symptoms he describes, the evidence does not fully support his allegations regarding the functional limitations caused by his symptoms.  AT 17.  In support of this finding, the ALJ noted that longitudinal mental status examination findings were generally unremarkable, that treatment records "repeatedly state that the claimant is doing well with medications, and has no side effects," that the most recent mental treatment records show he was doing fairly well overall despite reporting some anger and poor frustration tolerance, and that he maintained a reasonable activity level, including being able to perform childcare, maintain his personal care, care for pets, drive, shop in stores, play video games, and attend appointments.  AT 17-18.

I find plaintiff's challenges to the ALJ's finding offer no basis for disturbing the evaluation of plaintiff's reported symptoms.  I note as an

initial matter that plaintiff has not challenged the ALJ's reliance on the fact

that plaintiff's mental health symptoms were improved with prescribed

medication and he did not experience any significant side effects from

those, and that reason is supported based on my own review of the

evidence.  Further, as has already been discussed, I find no merit in

plaintiff's argument that the ALJ failed to appropriately consider the mental

status examination findings merely because he did not document some

instances in which plaintiff was noted as reporting a depressed or anxious

mood, or as having other sporadic abnormal findings related to speech,

insight, judgment, or intellectual functioning.  These reasons provide

support for the ALJ's overall conclusion that plaintiff's subjective reports are

not wholly consistent with the evidence.

Moreover, although plaintiff argues that the daily activities cited are

insufficient to support the ALJ's conclusion that he can perform work, he

fails to point to reported activities that would contradict the ALJ's finding or

show he is more limited in relevant activities than the ALJ considered.

Plaintiff does note that he reported being unable to complete tasks or pay

attention for more than short periods of time, but I emphasize that the ALJ's

discussion of the other evidence explains why he did not accept those

reports, given the absence of any evidence indicating ongoing difficulties

with memory or concentration in the treatment notes after plaintiff started taking stimulant medication in February 2020.  While plaintiff highlights that he reported being able to grocery shop only for short periods due to difficulty being around people, I note that the ALJ accounted for difficulty interacting with others by limiting plaintiff to only occasional interaction with supervisors, coworkers and the public.  AT 16.  Other reported limitations plaintiff cites, such as being unable to drive or sometimes perform self-care activities like dressing, are associated with his physical difficulties, and plaintiff has not levied any challenge against the ALJ's assessment of his physical functioning.  Lastly, the fact that plaintiff attended some appointments by telephone during the relevant period did not preclude the ALJ from considering his ability to attend appointments.  Presumably, attending a telephone appointment also requires certain mental abilities, including attention and concentration, that are relevant to the ALJ's analysis.  I therefore find nothing inappropriate in the ALJ's consideration of plaintiff's reported activities as one factor in his assessment of plaintiff's subjective reports.

Because the ALJ has provided multiple reasons based in the evidence and the regulatory factors to support his assessment of plaintiff's

subjective reports, I find the assessment and conclusions resulting from it to be supported by substantial evidence.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

After considering the record as a whole and the issues raised by the plaintiff in support of his challenge to the Commissioner's determination, I recommend a finding that the determination resulted from the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that the Commissioner's decision be AFFIRMED, defendant's motion for judgment on the pleadings (Dkt. No. 16) be GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) be DENIED, and plaintiff's complaint be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:      September 25, 2023
              Syracuse, NY

                                        DAVID E. PEEBLES
                                        U.S. Magistrate Judge